No. 28,413.

ELIZABETH MOHR (MOORE), *Appellee,* v. THE WOMAN'S BENEFIT ASSOCIATION OF THE MACCABEES, *Appellant.*

(274 Pac. 210.)

Opinion filed February 9, 1929.

*Arthur J. Stanley* and *Arthur J. Stanley, Jr.,* both of Kansas City, for the appellant.

*E. E. Martin* and *H. E. Dean,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant, a fraternal benefit association, from a judgment rendered against it on a life insurance certificate, alleging error of the trial court in overruling demurrer to plaintiff's evidence, making rulings excluding evidence of

the defendant, giving erroneous instructions, and overruling motion for new trial.

The plaintiff introduced the certificate, or rather, the face of it only, and rested. On the face of it were references to the application and warranties as to the correctness of the answers to all the questions therein and other warranties, and on the back of it what was later introduced in the form of a receipt in full for all claims under the certificate. The answer denied liability and set up three defenses—misrepresentations and fraud in answer to questions in the application as to the health of the deceased, an absolute waiver of rights under the certificate in case of abortion, and release by settlement and compromise. The reply was a denial of signing receipt, release, or settlement, and that plaintiff had no recollection of authorizing any one to sign same for her. The case was tried to a jury, which rendered a verdict for plaintiff for $1,850 and interest, it being a $2,000 policy, and credit was given for $150 paid, as defendant claims, in full settlement.

The certificate was issued November 25, 1921, on the life of a single woman past eighteen years of age, in which her mother, the plaintiff herein, was named as the beneficiary. The insured died February 19, 1923. The compromise or settlement was claimed to have been made August 23, 1923. The defendant introduced in evidence the application made by the insured and evidence of two parties procuring the application and the doctor making the examination. The defendant further identified and introduced the receipt on the back of the certificate and another release, which recited a denial of liability under the certificate because of the cause of death and the waiver in the application, and named the cause of death as septicæmia following abortion, and then showed an agreement to settle and compromise for $150. This release was on printed form or blank with blank spaces for names and other particulars to be written or filled in, with the following printed words erased by pen line drawn through them, but still legible, after the expression of reasons of the association denying liability: "Misrepresentation in the application of membership." The defendant then offered in evidence the deposition of a doctor in Topeka, who stated that he had very shortly prior to the making of the application of deceased for such membership treated her for pneumonia in Stormont hospital, whereas the application stated she had never had pneumonia, nor any medical care for the past five years. The objection

of the plaintiff to this offer was sustained, and the evidence was not introduced. After the defendant rested, the plaintiff testified in rebuttal denying the signing of all the papers introduced in evidence purporting to have been signed by her or by mark, including the release, the receipt on the back of the certificate, and the proof of death. The court instructed the jury to disregard all statements made in answer to questions in the application and all testimony with reference to the application. On the hearing of the motion for new trial, affidavits of witnesses to release, receipt and other papers were presented as newly discovered evidence, with photographic exhibits of numerous checks they said they saw plaintiff sign.

Of the several errors assigned and urged by the appellant, we will first consider the exclusion of the evidence as to the application and instructing the jury to disregard the same. This was done notwithstanding it was one of the grounds of defense in the answer denying liability by reason of the alleged misrepresentations therein as to the health of the insured, particularly with reference to having pneumonia and being treated therefor by a physician within five years prior to making the application. The trial court adopted the theory of the appellee that the defendant company, by offering in evidence the release as a compromise and settlement in which only one ground of defense was stated, namely, abortion, had thereby waived all other defenses, and particularly so since the printed reference to misrepresentations in the application was in the release so offered stricken out by pen line drawn through such words. The banker, who said he received it with instructions from Mr. West, the adjuster for the defendant company, to not deliver the check to the plaintiff until she signed the release, further said it was in its present form as to these words being stricken out when he received it. The defendant, of course, by offering the release in evidence, vouched for its genuine character as it was offered with the words intentionally stricken out, and doubtless intended it to support two of the three defenses named in the answer, viz., death from abortion and compromise settlement. Now the vital question is, Does the offer of this release constitute a waiver of the other defense contained in the answer?

Appellee maintains that by the decision in the case of *Lucas v. American Yeoman*, 105 Kan. 700, 185 Pac. 901, all other defenses were waived by the defendant when it offered this release limiting its defense thereby to abortion and compromise settlement. In the

Lucas case the answer alleged three defenses—misrepresentation in the application, right of arbitration, and accord and satisfaction. The settlement was made for $250, and release signed. The beneficiary acknowledged the execution of the release but said she did not understand it or its effect, and she was fraudulently induced to sign it. She was shown to have been a very ignorant old lady of a foreign birth and as having been an inmate of an insane asylum until very shortly prior to the execution of the release. The apparently strong point in the case was the letter written by the association to the attorney for the beneficiary in answer to a request for copy of the policy for the purpose of filing suit, in which letter the company said: "We have her accord and satisfaction with her signature to same, whereby she agrees to accept the amount of $250 as settlement of same, and in so far as we know the settlement has been satisfactory to her." (p. 703.)

The Lucas case differs from the case at bar in that there is no letter or statement limiting the defense to any one feature, and the further very important difference in the release. There its genuine character was admitted by plaintiff by acknowledging that she executed it, but she claimed she signed it by reason of misrepresentations and fraud; here the plaintiff testifies she never signed it or authorized it to be signed. At most, from her standpoint, it is a paper prepared by the defendant for her signature which she has never signed or recognized, but defendant has offered it in evidence with her name apparently signed thereto. If she never signed it and it is a forgery, it does not constitute a defense. The theory in the Lucas case is the reliance of the defendant upon a defense. The release there was a defense and was treated as such until set aside—just as a deed is a link in the chain of title until it is set aside. There was no attempt in this case to set the pretended release aside; the objection to it was that it was not a release to start with because it had never been signed by the plaintiff.

Reference is made in the Lucas case to the reasoning given in the opinion in the case of *Insurance Co. v. Ferguson*, 78 Kan. 791, 796, 98 Pac. 231, as to the theory of waiver. The following is copied from that opinion:

"Possibly there is no technical estoppel here, but, as we have seen, that is not necessary to a waiver, which is based on grounds analogous to that of an election of defenses. The company, after subjecting the insured to the expense of an action, upon the belief, justly entertained, that it would interpose

only the defense stated in refusing payment, ought not to meet the plaintiff with other defenses of which it had the same knowledge when it refused to pay that it had of the one upon which it based its refusal. In such a case a frank statement of all the grounds of refusal might obviate the expense of commencing an action."

The Ferguson case was on a fire insurance policy where, like in the Lucas case, there were letters written by the company speaking of only one defense, viz., the premises being unoccupied for more than thirty days before the fire, the company could not upon the trial be permitted to defend upon other grounds known to the company as well when it wrote the letters as when it filed its answer.

Three other Kansas decisions are cited by appellee in support of its theory of waiver: *Assurance Co. v. Bradford,* 60 Kan. 82, 55 Pac. 335; *Wildey v. Sheppard,* 61 Kan. 351, 59 Pac. 651; and *Mayse v. Great American Ins. Co.,* 123 Kan. 692, 256 Pac. 1002. In the first case the question of overinsurance was admitted by the insured when the adjuster came after the fire, but the adjuster and the company attempted to arrive at the amount of the loss by personal interviews and correspondence without any further reference to the overinsurance, and even started arbitration as to amount, which was later discontinued. It was there held that the overinsurance feature had been waived.

The second case was on an accident insurance policy where a barber and restaurant keeper, while hunting, had his left hand shot off. The company attempted negotiations with him for settlement on the theory that when the accident occurred he was engaged in an occupation more hazardous than that of barber and restaurant keeper and consequently he was entitled to a smaller amount of weekly indemnity and for loss of hand than for his usual vocations, but when they failed to effect a settlement the defendant on the trial alleged this reduced liability and tendered the amount on that theory, and further attempted to show that there was no liability whatever because of certain acts of the plaintiff. The court held there was no question left for determination except the amount, because defendant by such offer had admitted a liability and waived a right to such defense.

The third case cited concerns a waiver of notice in a hail insurance loss, and contains a review of a number of cases on waivers of various kinds, but the decision affects only the question of notice.

As stated in the Ferguson case, the doctrine of waiver of defense is similar to the election of remedies and it must have in some way inconvenienced or misled the insured before it can be considered a waiver.

"There are many cases asserting the rule that where an insurer denies liability for a loss on one ground, at the time having knowledge of another ground of forfeiture, it cannot thereafter insist on such other ground, especially where the insured has acted on its asserted position and incurred expense by bringing suit or otherwise. Where, however, the ground not asserted is one which could not have been cured by the insured, the rule is of doubtful application, as where a cancellation is asserted and there exists a breach of warranty, and the rule does not apply to grounds of objection not known to the insurer, if the beneficiary was not, by the ground of the refusal, led to take or refrain from taking any action which operated to his injury." (14 R. C. L. 1196.)

"Where the company refuses to pay a loss upon a specified ground, it is estopped from asserting other grounds relieving it from liability of which it had full knowledge where insured has acted upon its position as announced and incurred expense in consequence of it, or, as the rule is sometimes more broadly stated, when one specific ground of forfeiture is urged against a policy of insurance and the validity thereof denied on that ground alone, all other grounds are waived. On the other hand, it has been held that the mere assertion of another ground of nonliability does not amount to a waiver or estoppel where there is no showing of trouble, expense, loss, or detriment to insured." (32 C. J. 1354.)

In the case at bar there were no direct interviews between the beneficiary and the agents of the company, no letters about defenses to the certificate. The only reference to any conversation on the subjects by the adjuster with the brother and banker of the beneficiary shows he mentioned both defenses—misstatements in the application and abortion. We conclude that the release introduced in evidence as prepared by defendant, but the signature to which is denied by the plaintiff, cannot without her signature constitute a defense as a release or a recognition of the defense of abortion; that it was therefore not a waiver to other defenses pleaded in the answer, and it was error for the trial court to strike out the evidence as to misstatements in the application and to instruct the jury to disregard such evidence.

Having reached this conclusion, it is needless to consider the other assignments of error.

The judgment is reversed and cause is remanded for a new trial.